OPINION OF THE COURT
Ronald J. McGaw, J.
procedural history
On or about August 19, 1996, the defendant was arrested on two felony counts of attempted robbery in the second degree pursuant to Penal Law §§ 110.00 and 160.10 (1) and (2). Defendant was promptly arraigned before a Judge of this court later that same day, and bail was set. The matter was thereafter adjourned until August 23, 1996 for a preliminary hearing.
On August 23, 1996, prior to his appearance in this court for the preliminary hearing, the defendant was brought before a superior court on a violation of probation complaint relating to a previous conviction. He was arraigned in the superior court and bail was set on that charge.
Upon appearing in this court in the afternoon of August 23, 1996, the District Attorney declined to go forward with a preliminary hearing and stated that the People would not oppose a motion to release the defendant on his own recognizance pursuant to CPL 180.80. For strategic and practical reasons, defense counsel requested that the court set nominal bail, which was done, and the matter was adjourned until August 26, 1996.
On August 26, 1996, the defendant requested that a preliminary hearing be scheduled. At that time, however, the People advised the court that they would not participate in a preliminary hearing and again confirmed their willingness to have the defendant released on his own recognizance pending prose *989 cution. Again, for strategic reasons, the defendant declined a straight release and nominal bail was continued. The matter was then adjourned for the defendant to file the instant motion for "an Order granting defendant a preliminary hearing pursuant to Criminal Procedure Law Section 180.10, together with such other and further relief as this Court may deem just and proper”.
INTRODUCTION
Defendant’s motion is essentially based on two arguments. First, that under CPL 180.10 (2), the defendant has a right to a "prompt” preliminary' hearing on the felony charges, irrespective of the custody status of the defendant, unless such a hearing is waived by the defendant. Second, that the defendant has a right to a "prompt” preliminary hearing under both the Fourth Amendment to the US Constitution and article I, § 12 of the Constitution of the State of New York. For purposes of clarity, the court will address the constitutional question first.
CONSTITUTIONAL RIGHTS AND REQUIREMENTS
By virtue of its "incorporation” into the Fourteenth Amendment, the Fourth Amendment protects against unfounded invasions of liberty and privacy.[1] (Gerstein v Pugh, 420 US 103, 112 [1975]; see also, Baker v McCollan, 443 US 137, 142 [1979].) As stated by the Supreme Court, both "the standards and procedures for arrest and detention have been derived from the Fourth Amendment and its common-law antecedents.” (Gerstein v Pugh, supra, at 111 [emphasis added].) As further stated in Gerstein (at 112): "To implement the Fourth Amendment’s protection against unfounded invasions of liberty and privacy, the Court has required that the existence of probable cause be decided by a neutral and detached magistrate whenever possible.”
The classic statement of this principle appears in Johnson v United States (333 US 10, 13-14 [1948]): "The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.”
*990 Undoubtedly, maximum protection of an individual’s rights could best be assured by requiring a Magistrate’s review, or perhaps even a full hearing accompanied by the full panoply of adversary safeguards, whenever probable cause is at issue, whether prior to an arrest, as a prerequisite to incarceration, or merely because a charge is pending. Such a requirement would, however, constitute an intolerable handicap for legitimate law enforcement. (See, Gerstein v Pugh, supra, at 113.) Therefore, the Supreme Court has struck a practical compromise, as explained in Gerstein (supra, at 113-114): "Under this practical compromise, a policeman’s on-the-scene assessment of probable cause provides legal justification for arresting a person suspected of crime, and for a brief period of detention to take the administrative steps incident to arrest. Once the suspect is in custody, however, the reasons that justify dispensing with the magistrate’s neutral judgment evaporate.”
Thus, where there is a warrantless arrest and the accused has been taken into custody, the accused has a right under the Constitution to a prompt probable cause determination by a neutral Magistrate. That determination must generally take place within 48 hours of the arrest. (County of Riverside v McLaughlin, 500 US 44, 56 [1991].) Significantly, however, the probable cause determination need not take the form of an adversary hearing. As stated in Gerstein (supra, at 120): "These adversary safeguards are not essential for the probable cause determination required by the Fourth Amendment. The sole issue is whether there is probable cause for detaining the arrested person pending further proceedings. This issue can be determined reliably without an adversary hearing. The standard is the same as that for arrest. That standard — probable cause to believe the suspect has committed a crime — traditionally has been decided by a magistrate in a nonadversary proceeding on hearsay and written testimony, and the Court has approved these informal modes of proof.”
The purpose of Gerstein (supra) was to make clear that the Fourth Amendment requires every State to provide a prompt "determination” (although not necessarily a hearing) regarding probable cause. Gerstein does not, however, impose on States a rigid procedural framework. Rather, individual States are free to create their own procedures to determine probable cause, so long as those procedures comply with constitutional requirements. (County of Riverside v McLaughlin, 500 US, supra, at 53.) Thus, whatever the procedures a State may choose to adopt, it remains clear that "the Constitution does *991 not require an adversary determination of probable cause”. (Gerstein v Pugh, supra, at 123.) What is required by the Constitution is that whatever the procedures adopted by a State, those procedures must provide "a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty”. (Supra, at 125 [emphasis added].)[2]
WHAT IS A "SIGNIFICANT PRETRIAL RESTRAINT OF LIBERTY”?
In crafting the "significant pretrial restraint of liberty” standard (which triggers the constitutional requirement for a "fair and reliable determination of probable cause”), the Supreme Court attempted to reconcile the important competing interests faced by the States. On the one hand, the Court recognized that States have a strong interest in protecting public safety by taking into custody those persons who are reasonably suspected of having engaged in criminal activity. On the other hand, the Court realized that prolonged detention based on incorrect or unfounded suspicion may unjustly imperil a suspect’s job, interrupt his source of income, and impair his family relationships. (County of Riverside v McLaughlin, 500 US, supra, at 52.) As previously stated, of course, each State is free to determine its own procedures to effectuate the constitutional requirement of a probable cause determination.[3]
Some jurisdictions have interpreted a "significant pretrial restraint of liberty” as being synonymous with prolonged incarceration, and have created procedures requiring that a preliminary hearing be held in such cases to "protect innocent persons from languishing in jail on totally baseless accusations.” (United States v Mulligan, 520 F2d 1327, 1330 [6th Cir 1975].). Indeed, the Sixth Circuit Court of Appeals has gone so far as to say that incarceration is "the only legal justification” for a preliminary hearing. (Supra, at 1330.)
The Supreme Court in Gerstein (supra), however, was careful not to define a "significant pretrial restraint of liberty” as meaning only incarceration. Rather, they specifically left open *992 the possibility that a defendant who had been released from custody might nevertheless be entitled to a probable cause determination of some sort. As stated in Gerstein (supra, at 114): "Even pretrial release may be accompanied by burdensome conditions that effect a significant restraint of liberty.”
In further defining the standard, however, the Court specifically noted that a "significant pretrial restraint of liberty” would necessitate more than the mere obligation to appear in court (Gerstein v Pugh, 420 US, supra, at 125, n 26): "Because the probable cause determination is not a constitutional prerequisite to the charging decision, it is required only for those suspects who suffer restraints on liberty other than the condition that they appear for trial. There are many kinds of pretrial release and many degrees of conditional liberty * * * but the key factor is significant restraint on liberty.” (Emphasis added.)
At least one court, in discussing conditions that might constitute a "significant pretrial restraint of liberty”, referred to " 'restrictions on the travel, association, or place of abode of the person during the period of release’ ” as being "significant”. (Tarlton v State, 578 SW2d 417, 418 [Tex 1979].) Tarlton specifically noted, however, that the mere requirement that the defendant make his court appearances and remain available until discharge does not constitute a " 'significant restraint of liberty’ ”. (Supra, at 418 [emphasis added].) This court is in agreement with Tarlton in that regard.
In the instant case, the defendant was offered release on his own recognizance. Had defendant accepted his release, and were it not for the fact that the defendant is incarcerated on a separate charge of violation of probation, his only obligations would have been to appear in court when required and remain available for prosecution until the disposition of this case. These obligations do not amount to a "significant pretrial restraint of liberty", and thus do not trigger the constitutional requirement of a probable cause determination.[4]
That the defendant finds himself in a position of incarceration is, for him, unfortunate. His incarceration, however, is not by order of this court. Rather, the defendant is in jail pursuant to the order of a superior court based on a violation of probation complaint. While the defendant may wish to move the superior court for an order granting a hearing concerning those *993 allegations, it is not for this court to determine the facts of an alleged violation of probation that neither issued from nor is within the purview of this court. (See, People v Brooks, 105 AD2d 977, 978 [3d Dept 1984].)
STATUTORY RIGHTS AND REQUIREMENTS
Absent a "significant pretrial restraint of liberty”, there is no constitutional right to any type of "fair and reliable determination of probable cause”, let alone a right to a preliminary hearing. Nevertheless, States are free to grant statutory rights that exceed those provided for constitutionally. Where rights are provided for purely by statute, particularly where the statute is penal in character, any judicial interpretation of those rights must be strictly limited by the language of the applicable statute.[5] (People ex rel. Carollo v Brophy, 294 NY 540, 544 [1945].) Therefore, the next question to be determined is whether the defendant has a statutory right to a preliminary hearing under the laws of this State.
CPL 180.10 (2) states as follows: "The defendant has a right to a prompt hearing upon the issue of whether there is sufficient evidence to warrant the court in holding him for the action of a grand jury, but he may waive such right.”
Defendant argues that this section "unequivocally guarantees” the right to a preliminary hearing, and defendant focuses on the word "prompt” in further arguing as to the time frame within which such a hearing must take place. In this regard, the defendant’s memorandum of law states that: "An individual arrested without a warrant for a felony and arraigned in a City Court, as was Mr. Davis, does not receive a probable cause determination until the preliminary hearing [citation omitted]. In this context, the statutory right to a prompt hearing has constitutional ramifications in that it is the procedural device which provides for the constitutional safeguard of a prompt probable cause determination.” (Emphasis added.)
While the defendant does not go so far as to actually allege that the existing criminal procedures of the State of New York are unconstitutional, the defendant’s interpretation would necessarily make them so.
*994 Specifically, if the "hearing” referred to in CPL 180.10 (2) is indeed a "preliminary hearing”, and if a preliminary hearing is indeed "the device which provides for the constitutional safeguard of a prompt probable cause determination”, as the defendant asserts, then the time limit for holding such a determination would be limited to 48 hours after a warrantless arrest. (Powell v Nevada, 511 US 79 [1994] [four-day lapse prior to probable cause determination by a Magistrate held violative of McLaughlin 48-hour rule].) The criminal procedures of this State, however, provide for a "preliminary hearing” within 120 to 144 hours, not 48 hours. (CPL 180.80.) Thus, either the criminal procedures of this State are patently unconstitutional, or there must be some other provision by which a prompt probable cause determination is made prior to the time set for the preliminary hearing.
Indeed, this State provides that an accused who suffers a warrantless arrest and is in custody must be brought before a local criminal court "without unnecessary delay” for the purposes of arraignment and review of the accusatory instrument. (CPL 140.05 et seq.) The accusatory instrument, to be deemed sufficient, must establish reasonable cause to believe that the defendant has committed the offense charged therein. It is upon a Judge’s review of the accusatory instrument at arraignment that the constitutional requirement of determining probable cause is met.[6]
*995 So what, then, do we make of the wording of CPL 180.10 (2)? More particularly, what is meant by the term "holding”? Whether this word should be read to mean a significant pretrial restraint of liberty, such as incarceration, is an issue that has never been conclusively decided by the courts of this State. To read the statute as referring only to incarceration, of course, would mean that a preliminary hearing is required only when a defendant is in jail. The defendant argues against such an interpretation.
The defendant points out that the word "holding” has never conclusively been interpreted to mean "held in custody”. (People v Heredia, 81 Misc 2d 777, 780 [Suffolk Dist Ct 1975].) Courts have held, however, that where a defendant is not incarcerated at the time the People decline to participate in a preliminary hearing, "the intent of CPL article 180 has not been violated.” (People v Penrose, 164 Misc 2d 960, 961 [Warren County Ct 1995].) Nevertheless, in furtherance of the defendant’s argument, the defendant cites CPL 180.70 (4) which refers to the court’s obligation to dispose of the case after a preliminary hearing. That section states: "If there is not reasonable cause to believe that the defendant committed any offense, the court must dismiss the felony complaint and discharge the defendant from custody if he is in custody, or, if he is at liberty on bail, it must exonerate the bail.” (CPL 180.70 [4].)
The defendant asserts that this provision, which clearly envisions a situation where a preliminary hearing may be held even though the defendant is not incarcerated, lends support to the proposition that CPL 180.10 (2) "unequivocally guarantees” a preliminary hearing to every defendant charged with a felony, irrespective of his custody status. In the next breath, however, the defendant concedes that "he does not have an absolute statutory right to a preliminary hearing”. One is left to ponder how the law can "unequivocally” guarantee a hearing, yet at the same time grant something less than an "absolute” right to a hearing. To further complicate the issue, CPL 180.10 (4) requires that the court inform the defendant of his right to a hearing (whatever the extent of that right may be) and must also itself take such affirmative action as is necessary to effectuate that right.
CPL 180.80, of course, provides a remedy for a defendant who "has been held in custody” where no preliminary hearing has taken place within the prescribed time limits. The prescribed remedy is that the defendant be released on his own *996 recognizance. But what then is the situation where the defendant has requested a hearing upon a felony complaint even though he has already been released on his own recognizance (or offered release), and the People have either refused or failed to proceed with a hearing?
The answer lies in an understanding of the interplay between the constitutional requirements discussed above and the language of the statutory law. As pointed out previously, a "significant [pretrial] restraint of liberty” may exist absent incarceration. (Gerstein v Pugh, 420 US, supra, at 114 [emphasis added].) If the term "holding” in CPL 180.10 (2) is defined as any "significant pretrial restraint of liberty”, then CPL 180.10 (2) need not be read as being in conflict with CPL 180.70 (4), which envisions the possibility of a preliminary hearing absent incarceration. Rather, CPL 180.70 (4) comfortably applies irrespective of the defendant’s custody status, so long as he is suffering some "significant pretrial restraint on liberty”. Similarly, by interpreting the word "holding” to mean a "significant pretrial restraint of liberty”, CPL 180.10 (4) presents no conflict or confusion whatsoever in that the "affirmative action” to be effectuated by the court is the release of the defendant from the restraint of liberty under which he has been placed, pursuant to CPL 180.80.
Further to the question of whether the "right” set forth in CPL 180.10 (2) is unequivocal, it should be noted that the practice commentaries to that section state that the "right” is merely illusory "as the People can (and frequently do) avoid the hearing by presenting the charge to a grand jury. Indictment by a grand jury terminates the proceedings in the local criminal court — including the 'right’ to a hearing — and there is no remedy thereafter for deprivation of a hearing.” (Preiser, Practice Commentaries, McKinney’s Cons Laws of NY, Book 11 A, CPL 180.10, at 122, cited approvingly in People v Penrose, 164 Misc 2d, supra, at 961-962.)
Finally, and perhaps most importantly, whether or not the term "holding” in CPL 180.10 (2) is defined as meaning a "significant pretrial restraint of liberty", the fact remains that the only remedy provided by statute for situations where the People fail or refuse to proceed with a preliminary hearing is release of the defendant on his own recognizance. Specifically, there is no provision that would allow a court to either hold the People in contempt or to dismiss the case. The judiciary simply has not been granted any such power by the Legislature, and no such power can or should be read into the law. For to *997 read into the law a judicial power that has not been granted either by the Legislature or by the Federal or State Constitution would, in the opinion of this court, itself do violence to the Constitution by violating the principle of separation of powers.
CONCLUSION
In the final analysis, until such time as the Legislature of this State provides otherwise, if the People refuse or fail to proceed with a preliminary hearing contrary to the defendant’s wishes, the sole remedy for that failure is to release the defendant on his own recognizance pursuant to CPL 180.80. (See, Matter of Molea v Marasco, 64 NY2d 718, 722-723 [1984] [dissenting opn].)
Defendant’s motion is denied.

. Such protection is also provided for by article I, § 12 of the Constitution of the State of New York.

. In addition, the Constitution "guarantees an accused the right to a speedy trial, and invocation of the speedy trial right need not await indictment or other formal charge”. (Baker v McCollan, 443 US, supra, at 144.)

. The Uniform Rules of Criminal Procedure, for example, as well as many other jurisdictions, have created procedures whereby a person arrested without a warrant is entitled to a prompt first appearance before a Magistrate for a determination that probable cause existed for the issuance of an arrest warrant. Persons who remain in custody for an inability to qualify for pretrial release, however, are often offered another opportunity for a full probable cause hearing. (See, Gerstein v Pugh, 420 US, supra, at 124, n 25.)

. "The Fourth Amendment probable cause determination is addressed only to pretrial custody.” (Gerstein v Pugh, supra, at 123.)

. The absolute limit of judicial interpretation is "to ascertain what the utterance of the lawgiver means and then to apply that meaning in the case presented. The judge has no more power than any 'man in the street’ to apply a meaning which he supposes the lawmaker, with a larger view and a more comprehensive grasp of his subject, would have expressed.” (People v Mail & Express Co., 179 NYS 640, 643 [Ct Spec Sess 1919].)

. "Clearly a defendant has a substantial stake in having a probable cause determination within a reasonable time after arrest. But, it certainly seems to be a legislative matter to determine the appropriate procedural mechanism needed to effectuate this right. The defendant has little, if any, cognizable interest in the particular method selected so long as such mechanism complies with the dictates of due process and the Fourth Amendment.
"Regarding incarcerated defendants, the State of New York fulfills its mandate through various mechanisms. For instance, our accusatory instruments to be deemed sufficient must establish reasonable cause to believe that the defendant has committed the offense charged therein.” (People v Bresalier, 97 Misc 2d 157, 159 [Crim Ct, Kings County 1978]; see also, People v Dixon, 147 AD2d 769, 772 [3d Dept 1989] ["(a) felony complaint need only establish reasonable grounds to believe a crime was committed and may be based on hearsay”]; People v Martes, 140 Misc 2d 1034, 1039 [Grim Ct, Kings County 1988] ["To hold a defendant, the court at arraignment must rely on the facts stated in the information or complaint to make a 'probable cause’ determination within the meaning of the Fourth Amendment”]; People v Born, 166 Misc 2d 757, 760 [Just Ct 1995] ["When the court is presented with an accusatory instrument * * * it is in a similar position as when proof of probable cause, which is based upon hearsay, is presented at a suppression hearing”].)